KAREN A. OVERSTREET
Chief Bankruptcy Judge
United States Courthouse
700 Stewart St., Suite 6310
Seattle, WA 98101
206-370-5330

IN THE BANKRUPTCY COURT OF THE UNITED STATES FOR
THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| | ) | No. 07-10264 |
| PATRICIA ANN COLE, | ) | |
| | ) | **MEMORANDUM DECISION** |
| | ) | **DISALLOWING VEHICLE** |
| | ) | **OWNERSHIP EXPENSE DEDUCTION** |
| | ) | **FOR CHAPTER 7 DEBTOR WITHOUT** |
| Debtor. | ) | **CAR LOAN OR LEASE PAYMENT** |
| _____ | ) | |

Before the Court is the United States Trustee's Motion to Dismiss the Chapter 7 case of Patricia Ann Cole pursuant to 11 U.S.C. §707(b)(1).[1] The Debtor opposes the motion. The Court heard oral arguments on April 27, 2007 and instructed the parties to submit supplemental briefs in support of their respective positions. Because this is a question of first impression in this district, the Court took the matter under advisement. Having reviewed the record and pleadings, as well as applicable law, the

---

[1] Unless otherwise indicated, all Code, Chapter, Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§101 et seq. and to the Federal Rules of Bankruptcy Procedure [Interim], Rules 1001 et seq.

Memorandum Decision - 1

Court concludes that the Debtor is not entitled to a transportation ownership expense deduction on the means test form because she has no current ongoing auto loan or lease payment.

## I. FACTUAL BACKGROUND

The Debtor filed a voluntary Chapter 7 bankruptcy petition on January 24, 2007. There is no dispute that the Debtor's liabilities consist primarily of consumer obligations, thus Bankruptcy Code §707(b) applies. Line 13 of the Debtor's Official Form 22A (the "Means Test Form") reflects annualized Current Monthly Income ("CMI")[2] of $53,631. Because the amount reported is roughly $9,500 dollars higher than Washington State's median family income, the Debtor was required to complete the remaining portions of the means test calculation. The Means Test Form also reports the Debtor's CMI as $4,469.30 and expenses/deductions of $4,540.26. Based upon these figures, the Debtor's disposable monthly income is less than zero, therefore no presumption of abuse arises under Section 707(b)(2)(A)(i).

On April 2, 2007, the United States Trustee ("UST") filed a Motion to Dismiss the case pursuant to Section 707(b)(1). The UST takes issue with two of the deductions included on the Means Test Form. First, the UST argues that because the Debtor makes no monthly car payments on a loan or lease, she is not entitled to deduct from her CMI vehicle ownership costs under Section

---

[2] Current Monthly Income is defined in 11 U.S.C. §101(10A).

Memorandum Decision - 2

707(b)(2)(A)(ii)(I). Instead, the UST argues that the Debtor may take an additional operating expense of $200 because of the age of the vehicle. In the Means Test Form, the Debtor includes a $471 deduction for vehicle ownership costs (the amount of the Internal Revenue Service Local Standard for Ownership Costs in the West Census Region for one car), and a deduction of $329 for operating expense (the standard local operating expense). The Debtor agrees that she owns one vehicle and that it is free of liens. Second, the UST disputes the Debtor's entitlement to a deduction of $166 on line 26 of the Means Test Form for mandatory payroll expenses because the Debtor has not submitted evidence that these expenses are in fact mandatory. The Debtor has not responded to this argument nor provided any evidence that this deduction is mandatory. The Court will therefore disallow the payroll expense deduction and address the more complicated issue of whether the Debtor is entitled to the vehicle ownership expense deduction.

Taking into account the disallowance of the payroll expense ($166), if the UST's remaining objection is sustained, the Debtor's monthly deductions would have to be further reduced by $471 (vehicle ownership expense) and increased by $200 (vehicle operating expense), resulting in a net decrease to expenses of $437. Deducting the adjusted expenses from the Debtor's CMI, yields a monthly net disposable income of $366.04 and triggers the presumption of abuse.

Memorandum Decision - 3

## II. ISSUE PRESENTED

The issue before the Court is whether Section 707(b)(2) permits the Debtor to claim the "vehicle ownership expense" deduction even though she had no actual expense for an auto loan or lease as of the petition date.

## III. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding under 28 U.S.C. §157(b)(2)(A).

## IV. ANALYSIS

The presumption of abuse found in Section 707(b)(2)(A)(i) was added to the Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). That section requires courts to presume a bankruptcy filing is abusive when a debtor's monthly disposable income exceeds one of two thresholds. The presumption arises when: 1) the debtor's monthly disposable income is at least $166.67 per month, or 2) the debtor's monthly disposable income is at least $100 and would be sufficient to pay at least 25% of the non-priority unsecured claims in the case. The debtor's monthly disposable income is calculated by deducting from CMI allowances for payment of priority and secured debt and certain living expenses identified in Section 707(b)(2)(A)(ii)-(iv). The application of the presumption has serious ramifications for the debtor because, if the presumption is not rebutted, the debtor's

Memorandum Decision - 4

case is subject to dismissal or conversion, with the debtor's consent, to a Chapter 13.

Although the issue in this case is one of first impression for this Court, there is an extensive body of case law in other jurisdictions and much scholarly comment upon which the Court can rely. The case law reflects an almost even split of authority. *See, In re Swan*, Slip Copy, 2007 WL 1146485, 4 (Bankr. N.D. Cal.2007) (of the twenty-five opinions cited, fourteen allowed the ownership expense deduction even though debtor had no actual expense for an auto loan or lease, and the balance did not). Scholarly comments have been similarly divided. For example, Bankruptcy Judge Wedoff argues that the deduction is a fixed allowance and may be claimed by any debtor who owns a car, whether or not fully paid for. Eugene R. Wedoff, *Means Testing in the New §707(b)*, 79 Am.Bankr.L.J. 231, 257-258 (2005). Conversely, Professor Neustadter contends that the deduction should not apply to a debtor who owns her vehicle outright even if the need for replacement is imminent at the time of filing. Gary Neustadter, *2005: A Consumer Bankruptcy Odyssey,* 39 Creighton L.Rev. 225, 295 (2006).

**A.  Plain Language - Textual Analysis**

Because there is no settled precedent, the Court undertakes a comprehensive analysis, which should start with an examination of the text of the statute. The relevant portion of Section 707

Memorandum Decision - 5

reads:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief…." 11 U.S.C. 707(b)(2)(A)(ii)(I).

The terms National Standards and Local Standards refer to the Collection Financial Standards used by the Internal Revenue Service ("IRS") to determine a taxpayer's ability to pay a tax liability.[3] Additional IRS instructions related to the National and Local Standards are contained in the Internal Revenue Manual ("IRM"), part 5, including the IRS Financial Analysis Handbook, in Chapter 15, section 1 of part 5.[4]

A number of courts have attached significance to the word "applicable" in the first clause and the word "actual" in the second clause. Some courts have concluded that the different word choice before and after the comma reflects Congress' intent to create a fixed, universally applicable deduction in the case of expenses gleaned from National and Local Standards while limiting the amount of deductions for Other Necessary Expenses to the debtor's actual expenses. *See, e.g., In re Jean Fowler*, 349 B.R. 414, 418 (Bankr. D. Del. 2006)(allowing deduction in absence of

---
[3] *See http://www.irs.gov/individuals/article/0,,id=96543,00.html*.

Memorandum Decision - 6

auto loan or lease payment). Other courts, however, have interpreted the language more broadly, describing the terms as contextually different, but not mutually exclusive. *See, e.g., In re Ross-Tousey*, 2007 WL 1466647 (E.D. Wis. 2007)(disallowing deduction in absence of auto loan or lease payment). In *Ross-Tousey*, the district court concluded that the statute allows a debtor to deduct a standard amount under the first clause and actual expenses under the second, but the distinction does not destroy the debtor's duty to show the existence of a real ownership expense. In other words, an ownership expense cannot *apply* unless it *actually* exists. Though logically sound, the court's reasoning is incomplete because it fails to consider the possible existence of any ownership expense other than a monthly financing obligation in place on the date of filing.

A second textual argument considers whether the word "applicable" modifies the word "expense" or "amounts". Supported by the *Ross-Tousey* court's analysis, the UST contends that "applicable" means that the type of monthly expense must actually apply to the particular debtor. This argument is tautological and seems to misread the statute. In the plainest reading of the text, "applicable" modifies both "expense" and "amounts." Thus, the statute contemplates a variety of applications based not only on a debtor's status as borrower, outright owner, or non-owner, but also

---

[4] *See http://www.irs.gov/irm/part5/ch15s01.html.*

Memorandum Decision - 7

allows for the possibility that the *amounts* of Local Standards may vary across locations. That is, the amount that *applies* in North Dakota, may not *apply* in Washington. This point is perhaps obscured here because the Local Standard for vehicle ownership is currently $471 throughout the United States. Likewise, the claimable amount varies with the number of cars owned.

The only certainty is that courts' attempts to discern the plain meaning of the text have only revealed its patent ambiguity. Because there is no manifest expression of the statute's intended meaning, the Court must turn to another course of examination.

**B. IRS Methodology**

As with the analysis of the statutory text, courts have reached different conclusions as to the applicability of the IRM and the Collection Financial Standards. On one hand, several courts have concluded that the drafters' choice to employ the IRS National and Local Standards also implies intent to import the IRS' application of those standards. Section 5.8.5.5.2 of the IRM specifically addresses the ownership expense and confirms that, in the tax collection context, the ownership deduction is limited to the lesser of the Local Standard or the amount actually paid toward the purchase or lease of a vehicle:

> Ownership Expenses – Expenses are allowed for the purchase and/or lease of a vehicle, with different rates established for a first car and, if allowed, a second or more cars. Taxpayers will be allowed the local standard or the amount actually paid, *whichever is*

Memorandum Decision - 8

> *less*. Generally, auto loan and/or lease
> payments will not continue as allowed
> expenses after the terms of the loan/lease
> have been satisfied… [i]n situations where
> the taxpayer owns a vehicle that is currently
> over six years old and/or has reported
> mileage of 75,000 miles or more, an
> additional operating expense of $200 will
> generally be allowed for the collection
> period that remains after the loan/lease has
> been "retired" plus the operating expense.

In the case at bar, because the Debtor has no actual auto loan or lease payment, the lesser of the amounts referred to above is zero.

A number of courts have been persuaded that the vehicle ownership deduction should be denied based upon the clear directive in this IRS guideline. *See, e.g., In re Slusher*, 359 B.R. 290, 309 (Bankr. D. Nev. 2007)("Congress' decision to use the IRS standards within the Bankruptcy Code strongly suggests that courts should look to how the IRS determined those standards; that is, as to how the IRS would have applied them in similar circumstances."); *In re McGuire*, 342 B.R. 608 (Bankr. W.D.Mo. 2006)(ownership expense deduction not allowed pursuant to guidelines for tax collection in IRS publications). Prior to the enactment of BAPCPA, the Ninth Circuit Bankruptcy Appellate Panel looked to the IRS standards in order to determine a minimal standard of living for purposes of the student loan "undue hardship" test under Section 523(a)(8). *See Educ. Credit Mgmt. Corp. v. Howe (In re Howe)*, 319 B.R. 886 (9th Cir. BAP 2005)

Memorandum Decision - 9

On the other side of the argument, the court in *Fowler, supra,* points out that, unlike the text of an earlier version of the bill, BAPCPA makes no reference to the IRS' analytical processes. The *Fowler* court ultimately concluded that the "change from the prior version evidences Congress' intent that the Courts not be bound by the financial analysis contained in the IRM and lends credence to the Court's conclusion that it should look only to the amounts set forth in the Local Standards." *Fowler* at 419, *applying Transcontinental & Western Air, Inc. v. Civil Aeronautics Bd., 336* U.S. 601, 606 69 S.Ct. 756, 93 L.Ed. 911 (1949).

**C. Policy Arguments**

There are three policy arguments germane to this analysis. The first, asserted in *Fowler*, suggests that judicial economy is best served by allowing the standard deduction across the board. Giving perhaps too much credit to Congress, the court inferred a legislative intent to reduce litigation by adopting an "easily and uniformly applied" standard for determining whether the presumption of abuse arises. *Fowler* at 420-421. A Chapter 13 adjunct to this argument suggests that a court's time will be wasted by plan modifications flowing from the need to replace an aging car over the life of the plan. This concern extends to liquidations as well because the likelihood of dismissal followed by a subsequent Chapter 13 filing is increased by disallowing the ownership

Memorandum Decision - 10

deduction.

The second concern is that creditor repayment is discouraged by allowing vehicle-owning debtors without car payments to subtract $471 from their monthly income computation. One of the ostensible goals of the BAPCPA, and of modified Section 707 specifically, is to require debtors to repay their creditors where possible. Such a purpose would be frustrated by allowing a standard deduction to the extent that it would limit cash flow otherwise available for debt service – effectively resulting in a windfall to the debtor. The court in *Ross-Tousey* points to an absurd result where the owner of two, non-running junkers would be entitled to a deduction for each vehicle based merely on ownership. *In re Ross-Tousey* at 6.

The final policy argument is that disallowing the deduction may encourage the debtor to buy a new car prior to filing bankruptcy. One court lamented that debtors "[f]aced with the choice of owning a new car or driving an old car and paying their unsecured creditors a few hundred additional dollars every month, while at the same time being tethered to a plan that makes no allowance for car payments, any rational debtor would choose the former." *In re Swan* at 7 (looking at the issue in the context of Chapter 13). The new BAPCPA provision preventing cramdown of an auto loan claim secured by a vehicle purchased within 910 days before the petition date may serve to lessen this incentive for potential Chapter 13 filers. 11 U.S.C. §1325. For Chapter 7

Memorandum Decision - 11

filers, the UST will retain its right to argue that, notwithstanding the absence of a presumption of bad faith, the filing is nevertheless abusive because of the manipulation of the means test through the new car purchase. 11 U.S.C. §707(b)(1). A debtor with an older car who is in a Chapter 13 retains the ability to move for plan modification to fund the purchase of a new car if needed. 11 U.S.C. §1329.

## Conclusion

On balance, the Court agrees with the analysis in *Slusher*; because Congress referred the courts specifically to the IRS standards, the Court should be guided by how the IRS uses and employs those standards. Given the detail and clarity of that guidance, and because the arguments in support of a universal auto ownership deduction rely wholly on suppositions as to Congress' intent and disallowance would prevent a real injury to creditors, the Court concludes that a debtor with no auto loan or lease payment as of the filing date should not be permitted to take the standard vehicle ownership deduction in the Means Test Form. Consequently, the Debtor will be required to rebut the presumption

Memorandum Decision - 12

1  of abuse which arises in this case pursuant to Section
2  707(b)(2)(A)(i).
3       DATED this 3rd day of July, 2007.

_____
KAREN A. OVERSTREET
United States Bankruptcy Judge

Memorandum Decision - 13